# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PNC MORTGAGE,

    Appellant,

v.

SUSAN RHIEL, TRUSTEE,

    Appellee.

Case Nos. 2:10-CV-578,
2:10-cv-579
JUDGE SARGUS

## OPINION AND ORDER

This case is presently before the Court on Appellant PNC Mortgage's appeal of several orders of the Bankruptcy Court and the Parties' Consent Motion to Consolidate Cases 2:10-CV-578 and 2:10-CV-579 (Doc. 9). The Court **GRANTS** the motion to consolidate. Additionally, for the reasons set forth herein, the decisions of the Bankruptcy Court are **REVERSED**, and this case is remanded to the Bankruptcy Court for further proceedings.

**I.**

This is an appeal from the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division. On January 20, 2010, Appellee Susan Rhiel ("Rhiel"), trustee of the bankruptcy estate of debtor April Kaeck, initiated an adversary proceeding against National City Mortgage, the mortgagee of Kaeck's residence. (*See* R. 2.) Because Kaeck had allegedly never executed the note securing the property, Rhiel's complaint sought a declaration that Kaeck's half interest in the property was not encumbered by the mortgage, and made claims to avoid the mortgage as a fraudulent transfer. (*See* R. 2.) A summons was executed, and, at the location on the summons form indicating the method of service, Rhiel marked the box reading "Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

>National City Mortgage Company
>Attn: Officer, Managing or General Agent
>3232 Newmark Drive
>Miamisburg, Ohio 45342."

(R. 3 at 2.) Between the time Kaeck had taken out the mortgage, and the time Rhiel's complaint was filed, National City Mortgage was taken over by Appellant PNC Mortgage ("PNC"). The summons was received by PNC at the above address on January 22, 2010, and, as PNC failed to answer the complaint as required by February 19, 2010, Rhiel moved for a default judgment against PNC on February 26th. (*See* R. 4.)

On March 8, 2010, counsel for PNC entered an appearance in the matter, and, two days later, moved the Court for leave to file an answer. (*See* R. 5 & 6.) Counsel for PNC then filed an objection to Rhiel's motion for default judgment. (R. 10.) A hearing was held on the motion for default judgment on April 27, 2010. At the hearing, counsel for PNC conceded that the summons and complaint had in fact been received by PNC at the address listed on the summons, but argued that a default judgment should not be entered against PNC because service of the summons and complaint had been defective. (*See* Doc. 4 at 16 ("THE COURT: So, from what you're telling me then, there's no dispute that your client received the complaint and summons. MR. ALLBERY: That's correct. THE COURT: And you're saying, however, the green card itself is defective because of the language on the green card. MR. ALLBERY: We're saying that the green card was—did not comply with the bankruptcy rule.").) However, at the hearing, PNC did not produce any witnesses to explain why the complaint was not timely answered, although it had been received by PNC on January 22nd. (Doc. 4 at 18.) The Court issued the following ruling from the bench:

>Based upon my reading of the motion for a default judgment and responsive leave to answer, it's my conclusion that the trustee complied with the rules. I, frankly, don't understand what more could have been done in this case. In addition to

2

> that, I'm learning today that there is no dispute that it was received by the client. We don't have anyone here from the bank to explain under Rule 60(b) why additional time should be granted. We have a green card signed by some party, not only for the complaint but also for the motion for default judgment. That would be something that the bank should have more thoroughly prepared for if it wanted to have this Court to give additional leave to answer. But it's my conclusion from reading the trustee's motion, and looking at the way service is made, and looking at the service rules that she complied with the service rules and is entitled to a default judgment. As I said before, I don't see anything in the affidavit filed by the bank that would cause me to do otherwise. What I'm hearing today from you, Counsel, is that there is no doubt that it was received by the bank. And we have a green card signed twice by someone, and you're saying you don't know who that person is. And you don't have a client here to explain who that person is and under what authority they may have acted. So, Ms. Rhiel, if you'll prepare an order granting a default judgment motion, I will enter it . . . .

(Doc. 4 at 21–22.)

The Court then issued orders denying PNC's request for leave to file an answer, and granting Rhiel's motion for default judgment. (R. 13 & 14.) The order denying PNC leave to answer found that "PNC was properly and timely served with a copy of the Summons and Complaint; that PNC did receive a copy of the Summons and Complaint; that PNC failed to timely answer or otherwise defend; and that PNC failed to articulate a justifiable reason for not timely responding." (R. 13 at 2.) The Court's order granting the default judgment avoided the mortgage attached to Kaeck's interest in the property, and granted Kaeck's bankruptcy estate a recovery in the amount of $85,163.50, which represented one-half of the amount secured by the mortgage on the property. (R. 14 at 2.) PNC then moved for reconsideration of the Court's order denying leave to file an answer and granting default judgment. (R. 15.) In a brief order, the Court denied the motion to reconsider, finding that PNC "failed to establish any bases upon which the prior order of this Court should be reconsidered." (R. 20 at 1.)

Pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001, PNC now appeals.

3

## II.

The Court first briefly considers the Parties' joint motion to consolidate Cases 2:10-CV-578 and 2:10-CV-579. Apparently, PNC has lodged two appeals in this matter, one before the Bankruptcy Court denied PNC's motion to reconsider the order granting the default judgment and one after. (*See* R. 16 & 22.) The two appeals were then certified by the Bankruptcy Court at the same time and assigned consecutive case numbers in this Court. No briefing has been filed in Case No. 2:10-CV-579. Accordingly, the Court considers that case to raise overlapping issues on appeal as number 2:10-CV-578, and grants the Parties' motion to consolidate the two cases.

## III.

PNC's brief raises 13 bases for its appeal. These can be distilled into two, closely-related issues. First, was the Bankruptcy Court's grant of a default judgment against PNC proper? Second, did the Bankruptcy Judge err in granting the relief requested by Rhiel in her complaint without taking evidence?

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997). The Court reviews the Bankruptcy Court's refusal to vacate the default judgment for an abuse of discretion. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995). However, "[i]f the underlying judgment is void, it is a per se abuse of discretion for a [] court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Id.* (quotation omitted).

### A.

The Federal Rules of Bankruptcy Procedure provide that "[i]f a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except

4

when a different time is prescribed by the court." FED. R. BANKR. P. 7012(a). PNC's sole basis for attempting to overturn the default judgment is to contend that the complaint was never "duly served" because Rhiel failed to comply with the service requirements of the rules. Bankruptcy Rule 7004 governs service of process in adversary proceedings. Pursuant to subdivision (b) of that rule:

> Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:
>
> . . .
>
> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an *officer, a managing or general agent*, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

FED. R. BANKR. P. 7004(b) (emphasis supplied). Subdivision (h) of Rule 7004 applies to insured depository institutions and provides that:

> Service on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act) in a contested matter or adversary proceeding shall be made by certified mail addressed to an *officer* of the institution unless
>
> (1) the institution has appeared by its attorney, in which case the attorney shall be served by first class mail;
>
> (2) the court orders otherwise after service upon the institution by certified mail of notice of an application to permit service on the institution by first class mail sent to an officer of the institution designated by the institution; or
>
> (3) the institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service.

FED. R. BANKR. P. 7004(h) (emphasis supplied). None of the three enumerated exceptions apply to this case. Thus, while Rule 7004(b)(3) allows service of process to a corporation to be

5

accomplished through mailing the complaint and summons by certified mail to an officer, a managing agent, or a general agent of the corporation, Rule 7004(h) requires that service to an insured depository institution be made by certified mail only to an officer of the institution. Here, the Parties do not contest that PNC is an insured depository institution within the meaning of subdivision (h).

Although Rhiel marked the box on the summons applicable to insured depository institutions, the summons and complaint were actually mailed to the attention of an "Officer, Managing or General Agent" of PNC as opposed to just an "Officer." Accordingly, Rhiel did not meet the technical requirements of Rule 7004(h) in effectuating service of process in this case. The question then becomes whether this technical error rendered the service of process insufficient so that PNC should be excused from failing to timely answer the complaint. "[D]ue process requires proper service of process in order to obtain in personam jurisdiction" over a defendant. *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976) (overruled on other grounds by *Thomas v. Shipka*, 818 F.2d 496 (6th Cir. 1987)). "When a [] court lacks jurisdiction over a defendant because of improper service of process, [a] default judgment is void and must be set aside under Federal Rule of Civil Procedure 60(b)(4)." *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Here, the Court concludes that the technical error rendered service of process defective.

In support of its position, PNC cites *Hamlett v. Amsouth Bank (In re Richard Hamlett)*, 322 F.3d 342 (4th Cir. 2003) for the proposition that parties must strictly comply with the requirements of Bankruptcy Rule 7004(h). In *Hamlett*, the Fourth Circuit upheld the vacation of a default judgment against Amsouth, an insured depository institution, where service was made upon Amsouth's registered agent and not via certified mail to an "officer" of the institution. *See*

6

*id.* at 345. In considering the specific requirements of Bankruptcy Rule 7004(h), which

Congress enacted in 1994, the Court stated:

> A comparison of Rule 7004(h)'s language with that of other federal rules governing service of process on non-governmental entities and corporations clearly evidences a Congressional intent to fashion more rigorous service of process requirements for adversary proceedings initiated against insured depository institutions. For example, Rules 4(d)(2)(A) and 4(h) of the Federal Rules of Civil Procedure and Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure, all of which were promulgated prior to Rule 7004(h), provide for service of process on "an officer, a managing or general agent, or on any other agent authorized by appointment or by law." In contrast, Rule 7004(h) does not contain any of the language referring to agents, but instead provides for service solely on "an officer of the institution." Congress could easily have included within Rule 7004(h) the same "general" or "authorized" agent language contained in the other rules. Indeed, simply adopting the language of the other rules would seem to have been the easiest course. That Congress did not do this indicates clearly that it did not deem service on a designated "agent" sufficient under Rule 7004(h).
>
> The Rule's legislative history bears this out. Contrary to Hamlett's suggestion that the "only" purpose of the Rule was "to require that service of process on a bank be accomplished by certified mail," the legislative history indicates that Congress added Rule 7004(h) largely in response to the perceived need to grant additional safeguards to depository institutions involved in adversary proceedings. *See* 139 Cong. Rec. S707-10 (daily ed. Jan. 26, 1993) (discussing bill to amend Rule 7004 to require that service of process on an insured depository institution be made upon an officer of the institution); 140 Cong. Rec. S4576-77 (daily ed. April 20, 1994) (same). In doing so, Congress apparently determined that requiring service of process by certified mail *and* restricting such service to an "officer" of these institutions would achieve this goal. Thus, nothing in the Rule itself or its history suggests that Congress intended the term "officer" in Rule 7004(h) to include "registered agent."

*Id.* at 345–46.

It is true that, in the instant case, it is undisputed that PNC had actually received the summons and complaint, and thus was on notice of the pendency of the adversary proceeding against it. However, Sixth Circuit precedent suggests that in cases of defective service of process, the fact that a defendant may have actual notice of an action is irrelevant. In a slightly different context, that Court stated:

7

> As suggested by our prior decision in [*United States v. Gluklick*, 801 F.2d 834 (6th Cir. 1986)], we agree with the majority rule. Due to the integral relationship between service of process and due process requirements, we find that the district court erred in its determination that actual knowledge of the action cured a technically defective service of process. . . . In short, the requirement of proper service of process is not some mindless technicality. We conclude that plaintiffs' attempted service of process under Rule 4(c)(2)(C)(ii) did not give the district court personal jurisdiction over defendants.

*Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (internal quotation omitted).

Here, the Court is persuaded by *Hamlett* that a party must strictly comply with Bankruptcy Rule 7004(h) in effectuating service of process on an insured depository institution. Congress's intent in enacting that subdivision is clear; that, absent the applicability of the enumerated exceptions, only service via certified mail to an "officer" will suffice. Had Congress intended service of process to also be made to agents of insured depository institutions, it could have done so. Finally, the drafters' intent in differentiating between the requirements of subdivision (b)(3) and subdivision (h) is further evidenced by the prefatory language of subdivision (b), which begins with the phrase "[e]xcept as provided in subdivision (h)." *See* FED. R. BANKR. P. 7004(b).

PNC's actual notice of the adversary proceeding does not cure the defect in service. Accordingly, the Court holds that the Bankruptcy Court committed an error of law in concluding that service on PNC was proper. The default judgment against PNC is thus void, and the Bankruptcy Court abused its discretion in not vacating the judgment.

**B.**

As the Court concludes that the default judgment against PNC must be set aside because of the defective service of process, it does not consider whether the Bankruptcy Court also erred in awarding Rhiel's requested relief without taking evidence.

IV.

For the foregoing reasons, the decisions of the Bankruptcy Court granting a default judgment against PNC and refusing to vacate that judgment pursuant to Rule 60(b)(4) are **REVERSED**. This matter is remanded to the Bankruptcy Court for proceedings not inconsistent with this Opinion and Order.

**IT IS SO ORDERED**

 

 

<u>  3-18-2011  </u>
**DATED**

                                        **EDMUND A. SARGUS, JR.**
                                        **UNITED STATES DISTRICT JUDGE**